1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,                     No. CR 97-0218 WHA

        Plaintiff,

    v.                                                  **ORDER DENYING**
                                  **BAIL PENDING APPEAL**

JOHN A. HICKEY,

        Defendant.
_____/

## INTRODUCTION

On November 18, 2005, a jury found defendant John A. Hickey guilty of ten counts of mail fraud and securities fraud. On April 3, 2006, this Court sentenced Hickey to 97 months of imprisonment. Hickey is due to self-surrender soon. He now makes a motion under 18 U.S.C. 3143(b) to remain free on bail pending two outstanding appeals. This order holds that defendant has not satisfied any of the grounds for bail by clear and convincing evidence. Defendant's motion is, therefore, **DENIED**.

## STATEMENT

The long procedural history of this case is described in detail in this Court's order issued March 16, 2006, denying defendant's motion for a judgment of acquittal and motion for a new trial. Briefly, defendant Hickey was a real-estate developer. He joined with another developer named Mamie Tang to form Continental Capital Financial Group. Through this entity, they

**United States District Court**
For the Northern District of California

1    solicited investments in several limited partnerships.  The two at issue here were known as

2    "Continental Capital Secured Principal with Income Fund I" and "Continental Capital Secured

3    Principal with Income Fund II."  Combined, the two funds attracted twenty million dollars from

4    over 700 investors.  Both were sold via material misrepresentations and perpetuated in pyramid-

5    scheme style, according to the trial evidence.

6         Two federal civil proceedings were initiated against Hickey.  In September 1994, the

7    Securities and Exchange Commission filed a civil-enforcement action against Hickey and Tang

8    in this district before former Judge Fern Smith.  *SEC v. Hickey, et al.*, No. C 94-03336.  In

9    October 2003, after protracted and contentious enforcement proceedings, Hickey completed his

10   decree obligations.  Also, on June 25, 1995, a shareholder class action was filed against Hickey,

11   Tang and several brokers for the funds in federal court.  *Biancur v. Hickey, et al.*, C-95-02145.

12   A judgment of over ten million dollars ultimately was entered against Hickey.  To date,

13   however, he has not paid any part of the judgment.

14        As for the criminal action, a federal grand jury returned the original indictment on

15   July 17, 1997, against Hickey and Tang.  The indictment was based on the same fraudulent

16   conduct alleged in the SEC's enforcement action.  As detailed in the March 2006 order, the

17   criminal prosecution endured numerous delays and detours due to changes in counsel, a barrage

18   of motions (including identical motions brought multiple times), motions for continuances,

19   interlocutory appeals and changes in assigned judges.  The multitude of exclusions from the

20   Speedy Trial Act were recorded in numerous orders, as is explained in more detail below.[1]

21        On April 27, 2005, a federal grand jury returned a third superseding indictment.  In

22   counts one through eleven of the third superseding indictment, defendant was charged with mail

23   fraud in violation of 18 U.S.C. 1341.  Counts twelve and thirteen listed charges of securities

24   fraud in violation of 15 U.S.C. 78j(b), 15 U.S.C. 78ff and 17 C.F.R. 240.10b-5.  This was the

25

26   _____

27        [1] On March 15, 2000, Tang pleaded guilty to a single count of mail fraud.  On May 21, 2003, Judge Chesney sentenced Tang to 57 months of imprisonment and restitution of over $12,256,090.  On June 7, 2005,

28   Tang's motion to release her on bail pending appeal of the judgment was denied on the record by the undersigned judge.  On July 28, 2005, the Ninth Circuit affirmed the judgment against Tang.  She is now serving her sentence.

United States District Court

For the Northern District of California

indictment on which Mr. Hickey was tried.  Prior to trial, the government voluntarily dismissed the first two counts of the third superseding indictment.

Trial began on September 23, 2005.  The trial evidence showed that the investments were marketed on the theme that they were "guaranteed" by the two promoters whose net worth was claimed to exceed $20 million, that the investments were handsomely secured by no less than first or second deeds of trusts on the subject properties, that investors would be paid twelve percent per annum in interest plus recoupment of their principal in only five years, that the funds were "true no-load" funds, and that no offering proceeds would be used to fund ongoing salary and overhead but would be used to purchase and to predevelop the subject real estate. These themes proved to be entirely false.  These misrepresentations were central to the private placement memoranda and the marketing campaign used by the promoters.  Defendant reiterated these misrepresentations in numerous individual and group communications with investors, as well as with Continental Capital's brokers, wholesalers, employees and agents.  On November 18, 2005, a jury returned a verdict of guilty on all counts.

On March 16, 2006, this Court denied defendant's motion for a judgment of acquittal and motion for a new trial.  On April 7, judgment was entered.[2]  Defendant was sentenced to a total term of imprisonment of 97 months, plus three years of supervised release.  In addition, defendant was ordered to pay a total $17,454,581 in restitution — $4,207,084 to the Fund I investors and $13,247,497 to the Fund II investors.  Defendant was ordered to self-surrender on a date selected to allow Hickey to be present for the birth of his child.

                    *                    *                    *

Defendant currently has two appeals pending.

*First Pending Appeal — Appeal of the Frivolity Order.*

In March 2002, on the eve of an earlier trial date, defendant brought several motions, including a motion arguing that the allegations of misappropriation in a superseding indictment violated his rights under the Double Jeopardy Clause.  Then-presiding Judge Chesney denied

_____

[2] The April 7 judgment "amended" a judgment entered on March 27.  The amendment was merely typographical.

3

the motions.  Defendant filed an interlocutory appeal with the Ninth Circuit, leading to a stay of the trial and further proceedings pending the interlocutory appeal.  On February 4, 2004, while the interlocutory appeal was still pending, the criminal case against Hickey was transferred to the undersigned judge.  On April 30, 2004, the Ninth Circuit ruled on defendant's interlocutory appeal.  *United States v. Hickey*, 367 F.3d 888 (9th Cir. 2004).  The opinion concluded that the appellate court lacked jurisdiction over the interlocutory appeal because defendant had failed to present even a colorable claim of a double jeopardy violation.  *Id.* at 896.  Defendant petitioned the court for rehearing and for rehearing *en banc*.  These petitions were denied in a ruling which also made several immaterial modifications to the original opinion. *United States v. Hickey*, 400 F.3d 658 (9th Cir. 2005).  Defendant also petitioned the Supreme Court for a writ of certiorari.  That petition was denied.  *Hickey v. United States*, 126 S. Ct. 377 (Oct. 3, 2005).

During the pendency of these appeals, proceedings renewed before the district court. Defendant challenged the Court's jurisdiction over the case during the pendency of defendant's petitions to the Ninth Circuit.  Defendant's challenge was rejected in an order issued on December 14, 2004, which deemed defendant's appeals frivolous.  The December 2004 order *itself* became the subject of an appeal which is still pending.  That frivolity-order appeal was assigned Ninth Circuit case No. 05-10004.

*Second Pending Appeal — Appeal of the Judgment and Trial and Post Trial Proceedings.*

Following sentencing, defendant filed a notice of appeal from his judgment and conviction.  That appeal has been assigned Ninth Circuit Case No. 06-10206.  In the second pending appeal, defendant alleged errors relating to the trial, the resolution of the motions for judgment of acquittal and new trial, and in sentencing.

On May 1, 2006, the Ninth Circuit granted the government's motion to consolidate defendant's First and Second Appeals.  Defendant moved to reconsider consolidation of the two appeals.  On June 12, the Ninth Circuit granted the request for reconsideration of consolidation. The question of whether the two appeals will be consolidated is still outstanding.

**United States District Court**
For the Northern District of California

**ANALYSIS**

The Ninth Circuit has explained that, pursuant to 18 U.S.C. 3143(b), a defendant is to be incarcerated pending appeal unless a court finds:

> (1) that the defendant is not likely to flee or pose a danger to the safety of any other person in the community if released;
>
> (2) that the appeal is not for the purpose of delay;
>
> (3) that the appeal raises a substantial question of law or fact; and
>
> (4) that if that substantial question is determined favorably to defendant on appeal, that decision is likely to result in reversal or an order for a new trial of all counts on which imprisonment has been imposed.

*United States v. Handy*, 761 F.2d 1279, 1283 (9th Cir.1985) (citations omitted); *see also United States v. Wheeler*, 795 F.2d 839, 840 (9th Cir. 1986). Defendant must show by "clear and convincing evidence" that he satisfies all four factors. *United States v. Reynolds*, 956 F.2d 192, 192 (9th Cir. 1992).

Defendant's motion focuses primarily on the third and fourth factors of the *Handy* analysis. As explained herein, however, defendant has not shown by clear and convincing evidence that he satisfies *any* of the four factors.

**1.    DANGER TO THE SAFETY OF ANOTHER PERSON.**

Defendant is not a flight risk. Defendant, however, poses a danger to others.

The situation here is closely analogous to that in *Reynolds*, *supra*. The "danger" contemplated by Section 3143(b) "may, at least in some cases, encompass pecuniary or economic harm." *Reynolds*, 956 F.2d at 192. In *Reynolds*, defendant was convicted of mail fraud and witness tampering. The Ninth Circuit agreed with the district court that defendant possibly posed a risk to cause *pecuniary* damage to members of the public.

So too here. Hickey perpetrated a scheme that preyed on vulnerable investors, including many elderly investors who counted on the invested funds for their retirements. Hickey's crimes did not require weapons to perpetrate. Instead, they required only Hickey's imagination in order to concoct lies about funds that he did not have and properties that he did not own. As long as Hickey is a free man, he is a risk to perpetrate such a scheme again.

1   Indeed, at the sentencing hearing, Hickey requested a stay of his sentence for three years

2   in order to develop a new real-estate investment in the Hunter's Point area of San Francisco.

3   The purported benefit of the stay was to allow Hickey to "earn" back the money for investors

4   that he squandered.  While this sounded positive, the Court finds that Hickey would resort to

5   fraud and deceit, or be tempted to do so, in any business dealings with others.

6   **2.   APPEAL FOR THE PURPOSE OF DELAY.**

7   As stated, defendant must show that his request for bail is not for "the purpose of delay."

8   *Handy*, 761 F.2d at 1283.  Defendant has also not made a clear and convincing showing that the

9   instant request is anything other than another link in a long chain of delay tactics undertaken by

10  defendant and his former and now-returned counsel David Cohen.

11  As background, in September 2004, Attorney Cohen moved for a six-month continuance

12  of the trial (or more) or, in the alternative, to withdraw as counsel.  As the public record herein

13  reveals, Attorney Cohen was suffering from the effects of alcoholism and wanted a minimum of

14  a six-month continuance, perhaps more, to seek treatment.  He had developed an almost

15  unbroken string of missed deadlines, a litany of frivolous and near-frivolous motions, and was

16  largely responsible, in the Court's view, for the delay in ultimately bringing the case to trial.  In

17  an order issued on September 14, 2004, Attorney Cohen was permitted to withdraw.  Hickey

18  then retained Attorney Joseph Russoniello, associated with Cooley Godward LLP.

19  Even after Attorney Russoniello entered the action, Attorney Cohen participated

20  unofficially.  For example, against the wishes of Attorney Russoniello, defendant himself filed

21  his own motion to dismiss prior to the trial date in 2005.  In that motion, defendant rehashed

22  several arguments previously rejected.  That motion was drafted, the record indicates, by his

23  Attorney Cohen.  It was supplied to Hickey, who then filed it (without Attorney Cohen's name

24  appearing thereon).  The motion was disapproved by Attorney Russoniello.  The motion was

25  denied in this Court's order dated November 8, 2005.

26  After judgment was entered, Hickey retained Attorney Cohen, officially again, as his

27  appellate counsel.  Attorney Cohen filed the instant motion on the eve of defendant's self-

28  surrender date.

1    Delay was repeatedly precipitated by defendant and Attorney Cohen during the course

2   of this criminal action.  There are numerous examples where defendant has filed the exact same

3   motion multiple times.  The effect of this repetition was numerous postponements of his trial.

4   Defendant has also filed numerous appeals, two of which are still pending.  The Ninth Circuit

5   has ruled that defendant's previous appeals failed to state any colorable claims.  Furthermore, in

6   December 2004, this Court ruled that defendant's jurisdictional argument — namely, that this

7   Court lacked jurisdiction during defendant's pending interlocutory appeals — was frivolous.

8   Defendant raises this jurisdictional argument *again* in this motion.

9    Further delay appears to be the primary purpose of defendant's latest motion.

10    **3.    SUBSTANTIAL QUESTION OF LAW OR FACT.**

11    Defendant has a high burden to show that any of the issues he raises on appeal present a

12   "substantial question" of law or fact warranting bail.  "A 'substantial question' is one that is

13   'fairly debatable.'"  *Handy*, 761 F.2d at 1283.  "In short, a 'substantial question' is one of more

14   substance than would be necessary to a finding that it was not frivolous."  *Ibid.* (internal citation

15   omitted); *see also United States v. Montoya*, 908 F.2d 450, 451 (9th Cir. 1990).  For the reasons

16   stated herein, defendant does not articulate any substantial question of law or fact in any of the

17   multifarious issues he presents in his motion.

18    **A.    SPEEDY TRIAL ACT.**

19    Defendant argues on appeal, as he had on several prior occasions, that his prosecution

20   was in violation of the Speedy Trial Act, 18 U.S.C. 3161.  This argument fails to present a

21   substantial question.

22    "If a defendant pleads not guilty, the trial 'shall commence' within 70 days 'from the

23   filing date (and making public) of the information or indictment' or from the defendant's initial

24   appearance, whichever is later."  *Zedner v. United States*, __ U.S. __, 126 S. Ct. 1976, 1989

25   (2006).  "Section 3161(h) specifies in detail numerous categories of delay that are not counted

26   in applying the Act's deadlines."  *Id*. at 1985.  "[T]he Act implies that those findings must be

27   put on the record by the time a district court rules on a defendant's motion to dismiss;" but there

28

United States District Court

For the Northern District of California

is no absolute requirement that the exclusions be put on the record at the time they are granted. *Id.* at 1989.

The exclusions under the Speedy Trial Act were adequately recorded throughout the course of this prosecution, in writing or orally, consistent with the requirements of *Zedner* and Section 3161(h). These exclusions were proper under the Act. *United States v. Hall*, 181 F.3d 1057, 1062 (9th Cir. 1999) (in determining whether an exclusion is reasonable "courts look particularly to 'whether the delay was necessary to achieve its purpose' and to whether there was any 'actual prejudice suffered by the appellant'") (internal citation omitted). Several judges including the undersigned judge properly excluded time on the basis of the complexity of the prosecution, but more significantly, on the basis of defense counsel's numerous motions, requests for continuances and requests for more time to prepare. This order reiterates the important dates of exclusion so as to show the total insubstantiality of defendant's arguments.

- **July 17, 1997 and August 12, 1997**. On July 17, 1997, defendant was arraigned on the original indictment. In an amended order dated August 13, 2001, Magistrate Judge James Larson explained that time between July 17, 1997 and August 12, 1997, was excluded. Judge Larson's original exclusion order entered on July 18, 1997, failed to articulate fully the basis for these early exclusions. Upon Judge Chesney's request, Judge Larson amended the order and properly articulated the grounds for the exclusion. That ground was complexity, a statutorily enumerated ground that undoubtedly describes this prosecution. 18 U.S.C. 3161 (h)(8)(B)(iv). As Magistrate Judge Larson explained, his amended order was based on his review of the transcripts of the proceedings. Furthermore he noted that "Counsel for Defendant Hickey agreed to the date of August 12th" (Larson Aug. 13, 2001 Order at 2).

- **August 12, 1997 to September 9, 1997**. On August 22, 1997, Judge Chesney excluded time from August 12, 1997 to September 9, 1997, again on grounds of complexity. Defense counsel approved Judge Chesney's exclusion order as to form.

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

- **September 9, 1997 to April 23, 1998**.  From August 1997 to September 1997, both Hickey and Tang filed a barrage of motions which stopped the clock for Speedy Trial Act purposes.  *See, e.g.*, *Henderson v. United States*, 476 U.S. 321, 330 (1986) (discussing exclusions during pendency of motions); *Hall*, 181 F.3d at 1062–63 (explaining that delaying one defendant's trial for proceedings relating to a co-defendant is reasonable if necessary to accommodate a joint trial).

      Defendant contends that all of the above motions were completely resolved by January 29, 1998.  This is not accurate.  While Hickey and Tang's motions were pending, the government moved to terminate funding for Hickey's court-appointed counsel before Magistrate Judge James.  On February 26, 1998, Magistrate Judge James issued an order to defendant to show cause why funding should continue for his counsel.  The show cause hearing was not held until March 30, 1998, at which time Magistrate Judge James ruled that funding would continue for Hickey's defense.  The ruling, however, remained sealed until April 23, 1998.  Thus, the motion regarding termination of Hickey's counsel was pending during the entire period between January 29, 1998 and April 23, 1998.[3]  Such a question about appointment of counsel was properly deemed to constitute an "other proceeding concerning the defendant."  18 U.S.C. 3161(h)(1).  Judge Chesney ruled accordingly in denying defendant's motion to dismiss on the alleged grounds of a violation of the Speedy Trial Act on September 12, 2001 (Docket Entry 294).

- **April 23, 1998 to June 17, 1998**.  Prior to the unsealing of Magistrate Judge James' order, during a status conference on April 22, 1998, Judge Chesney ruled that time was excluded from the date of the conference until June 17, 1998.  At the status conference, Judge Chesney made an express finding that the case was

---

[3] Even if the period between March 30 and April 23, while Magistrate Judge James' order was sealed, was counted against the clock for Speedy Trial Act purposes, only 23 days elapsed.  That is an insufficient amount of time to raise a debatable issue of a violation of the Act.

**United States District Court**
For the Northern District of California

complex (Docket Entry 60).  Such prospective exclusions on the basis of
complexity are clearly proper under *Zedner*, *supra*.

- **June 17, 1998 to July 22, 1998**.  On June 17, 1998, Judge Chesney excluded
  time from June 17, 1998 to July 22, 1998, on grounds of complexity.
- **July 22, 1998 to August 19, 1998**.  On July 22, 1998, Judge Chesney excluded
  time until August 19, 1998, on the grounds that defense counsel required more
  time to review discovery material.  This was time that defense counsel *himself*
  requested.
- **August 19, 1998 to November 18, 1998**.  On August 19, 1998, Judge Chesney
  excluded time until November 18, 1998, on the grounds of complexity, a finding
  that she reiterated and amplified in a ruling issued on June 20, 2001.  In addition,
  the clock was stopped from October 19, 1998 to November 13, 1998, since
  defendant had filed a motion for continuance of the filing deadline for certain
  motions.  Defendant withdrew the request for a continuance on November 13.
- **November 18, 1998 to January 13, 1999**.  Again, on December 2, 1998, Judge
  Chesney announced an exclusion based on complexity and indicated that the
  exclusion was necessary for *defense counsel* to review discovery material.  She
  extended that exclusion until January 13, 1999.
- **January 13, 1999 to February 3, 1999**.  On January 13, 1999, Judge Chesney
  excluded time until February 3, 1999, due to complexity.
- **February 3, 1999 to March 17, 1999**.  On February 3, 1999, Judge Chesney
  excluded time until March 17, 1999, on grounds of complexity and preparation
  time for defense counsel.
- **March 17, 1999 to April 14, 1999**.  On March 17, 1999, Judge Chesney
  excluded time until April 14, 1999, again on grounds of complexity and to allow
  defense counsel more preparation time.

United States District Court

For the Northern District of California

- **April 14, 1999 to August 11, 1999**.  On April 14, 1999, again faced with requests from defense counsel for extensions for preparation time, Judge Chesney further excluded time until August 11, 1999.

- **August 25, 1999 to September 8, 1999**.  The clock stopped from August 25, 1999 to September 8, 1999, after co-defendant Tang's counsel sought to be relieved from the case.  *See Hall*, 181 F.3d at 1062–63.

- **September 8, 1999 to June 11, 2000**.  Due to the change in Tang's defense counsel, and the renewed need for further review of materials, Judge Chesney ruled on October 13, 1999, that time was to be excluded from the preceding period until June 11, 1998.  *Hall*, 181 F.3d at 1062–63.

- **June 11, 2000 to September 11, 2000**.  On the same basis as the preceding, Judge Chesney found further preparation time necessary and continued to exclude time until September 11, 2000, in an order dated February 11, 2000.

- **September 11, 2000 to September 12, 2005**.  Defendant does not challenge the exclusion of time during this stretch of five years.  It is worth noting, however, that the time during this period was properly excluded, initially due to a barrage of pre-trial motions before Judge Chesney that stalled the commencement of trial for months and years.  Then, after ruling on those motions, the parade of interlocutory appeals began.  The prosecution was stayed during the pendency of defendant's interlocutory appeals until the undersigned judge lifted that stay in 2004.  Once the proceedings began anew in this Court, defendant changed counsel and filed yet another barrage of pre-trial motions and requests for continuances.  The exclusions of time were properly recorded either orally or in writing, and were more than reasonable, as defendant apparently concedes.

- **September 12, 2005 to September 23, 2005**.  Defendant does argue, however, that the 11 days from September 12, 2005 to September 23, 2005 (the start of Hickey's trial), should be counted against the clock.  Defendant claims that September 12 was the date that this Court ruled on the last of another round of

11

United States District Court
For the Northern District of California

1   pre-trial motions filed by defendant.  On the contrary, defendant still had his

2   motion regarding alleged destruction of evidence pending until after the

3   commencement of trial.

4   •   **September 23, 2005 to present**.  Obviously, there are no Speedy Trial Act

5   issues after the commencement of trial.

6   All of the above exclusions of time were recorded consistently with the dictates of the

7   statute and the case law.  The exclusions were reasonable and caused no prejudice to defendant,

8   who has enjoyed his freedom for eight years as a result of the innumerable delays.  Defendant

9   has challenged the exclusions previously, despite being the one who initiated the vast majority

10  of the delay of the inevitable trial.  The Speedy Trial Act issue is simply not fairly debatable.

11  *Handy*, 761 F.2d at 1283.[4]

12              **B.        JURISDICTION PENDING INTERLOCUTORY APPEALS.**

13  Defendant's second main argument for bail pending appeal is yet another challenge to

14  this Court's determination that it had jurisdiction to move ahead with this criminal action

15  despite his delay tactic in pursuing a frivolous interlocutory appeal (see March 2006 Order

16  at 24–25).  As noted above, this is the subject of the appeal of the frivolity order, issued by this

17  Court on December 14, 2004.

18  Defendant's jurisdictional argument lacks substance.  To reiterate this Court's previous

19  orders, while defendant's case was before Judge Maxine Chesney, defendant filed various

20  pretrial motions with a litany of purported grounds for dismissal, including an argument that the

21  first superseding indictment constituted a double-jeopardy violation.  Judge Chesney denied

22  those motions and defendant filed an interlocutory appeal, literally on the eve of trial.  The

23  Ninth Circuit ultimately rejected defendant's appeal, finding defendant stated "no colorable

24  _____

25      [4] Defendant also claims that dismissal of the securities-fraud counts (counts 12 and 13) was specifically
    warranted for violation of the Speedy Trial Act.  Defendant contends that all exclusions granted between the
26  issuance of the first superseding indictment in January 2001 and the issuance of the third superseding indictment
    in May 2005 only applied to the mail-fraud counts, not the securities-fraud counts.  This is so, it is argued,
27  because the securities-fraud counts relate back to the original indictment.  This argument is incoherent.  Suffice
    it to say, this order articulated the validity of all exclusions of time against the running of the Speed Trial Act in
28  the above subsection.  Those exclusions apply equally to the securities-fraud counts and to the mail-fraud
    counts.

**United States District Court**
For the Northern District of California

claim" warranting appellate jurisdiction.  Defendant subsequently filed petitions for rehearing and hearing *en banc* before the Ninth Circuit and a petition for writ of certiorari with the Supreme Court.  All of these petitions were denied.  Much delay was injected by this tactic.

Frivolous claims of double jeopardy do not divest the district court of jurisdiction to proceed with trial.  *United States v. LaMere*, 951 F.2d 1106, 1108 (9th Cir. 1991) (citing *United States v. Dunbar*, 611 F.2d 985, 988 (5th Cir. 1980) (*en banc*)).[5]  Even if the double-jeopardy claim raised in defendant's interlocutory appeal was found not to be frivolous, the Court would have been able to retain jurisdiction over all aspects of the case not raised in defendant's interlocutory appeal.  *See, e.g.*, *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982); *In the Matter of Thorp*, 655 F.2d 997, 998 (9th Cir. 1981).  Thus the Court at least had jurisdiction to conduct pre-trial proceedings.  *See, e.g., United States v. Claiborne*, 727 F.2d 842, 851 (9th Cir. 1984) (little worry of irreparable harm "when only pre-trial hearings proceed in the district court rather than the trial itself").  By well before trial — March 8, 2004 — the Ninth Circuit had rejected not only on defendant's interlocutory appeal, but also his petition for rehearing and his petition for rehearing *en banc*.  The result did not change just because defendant's petition for writ of certiorari with the Supreme Court, rather than his petitions before the Ninth Circuit, was pending when the trial actually commenced.  As the Ninth Circuit concluded, defendant never stated a colorable claim.  There is simply no merit to the contention that this Court was without jurisdiction to try defendant.  Bail pending appeal of this issue is not warranted.[6]

---

[5] Defendant contends that this Court's December 2004 frivolity order was too narrow to cover all of the purported issues pending on appeal.  This is not accurate.  The double-jeopardy claim was the only claim for which the Ninth Circuit even had theoretical jurisdiction under the collateral-order doctrine.  Ultimately, the appellate court found that it lacked jurisdiction even as to the double-jeopardy issue, because that issue was not colorable.  The other issues raised by defendant before the appellate court did not fall within the collateral-order doctrine, and thus the Ninth Circuit court could not have accepted jurisdiction, even if those other issues were colorable (which they were not).  *See Hickey*, 367 F.3d at 893.  In other words, no frivolity ruling was necessary except as to the double-jeopardy issue.  This Court deemed the double-jeopardy issue frivolous.

[6] Of course, a court retains jurisdiction pending a notice of interlocutory appeal of a ruling on the frivolity of an issue raised in a previous interlocutory appeal.  To find otherwise would invite a never-ending circle of interlocutory appeals perpetually divesting jurisdiction.

**C. STATUTE OF LIMITATIONS WITH RESPECT TO FUND I.**

Defendant lists a string of other issues which he has apparently raised in his second pending appeal (his appeal of the judgment, trial and post-trial proceedings). Most of these remaining issues were discussed in detail in this Court's March 2006 order. None of these remaining issues are substantial for purposes of granting bail on appeal.

Defendant argues that the securities-fraud count for Fund I (count 12) was barred by the statute of limitations. This order directs the reader to pages 16 through 18 of the March 2006 order, which discussed this argument in detail. In brief, count 12 alleged that defendant engaged in securities fraud relating to Fund I from on or about June 28, 1991 to on or about September 19, 1994. The limitations period for count twelve was five years. 18 U.S.C. 3282. For the charge to be timely, therefore, the fraud had to be continuing on or after July 16, 1992, the date five years prior to the original indictment.

Defendant notes that the procedural posture of the March 2006 order was a motion for judgment of acquittal under FRCrP 29(c). The reasoning in that order, however, remains applicable. Defendant's statute-of-limitations argument lacks merit for three independent reasons.

*First*, defendant waived the defense. Defense counsel did not object to a jury instruction that explicitly removed the statute of limitations from the equation, despite having the opportunity to review and object to two sets of proposed instructions. Accordingly, the following instruction was given (Final Charge at 14) (emphasis added):

> It is true that the events and actions alleged in the indictment occurred some time ago. Do not concern yourself with the passage of time and do not speculate as to the reason why this trial did not take place earlier. *The prosecution of this case is not barred by any statute of limitations.*

Defendant's failure to object constituted waiver. *See United States v. LeMaux*, 994 F.2d 684, 689 (9th Cir. 1993) (citation omitted); *United States v. Lo*, 231 F.3d 471, 480 (9th Cir. 2000).

*Second*, defendant's statute-of-limitations argument is insubstantial on the merits. The government presented ample evidence that *after* July 16, 1992, defendant continued to conceal the fraud involved in the Fund I scheme from investors. In Ponzi-scheme fashion, defendant

**United States District Court**
For the Northern District of California

diverted funds from later investors to make payments to earlier investors and thereby conceal the fact that the program was imploding.  In so doing, defendant was able to keep money flowing in well after the official closing date for Fund I.  Fund I investors were lulled into a false sense of security because payments — albeit pyramid payments — were being made, giving the illusion of success and thereby bringing in Fund II investors.  All the while, the investors from both funds were being robbed.  Such a fraudulent scheme is not infirm under the statute of limitations.  *United States v. Brown*, 578 F.2d 1280, 1285 (9th Cir. 1978).

*Three*, Fund I was not even completed prior to July 16, 1992.  Damon Jones, the last Fund I investor, did not sign his subscription agreement until September 1992 — over two months after the limitations cutoff.  Thus, the acceptance was not even complete.  *See Carroll v. United States*, 326 F.2d 72, 86 (9th Cir. 1963).

### D.   STATUTE OF LIMITATIONS WITH RESPECT TO SECURITIES-FRAUD COUNTS IN THIRD SUPERSEDING INDICTMENT.

Defendant argues that the third superseding indictment substantially broadened the charges contained in the original indictment.  According to defendant, the securities-fraud counts (counts 12 and 13) were barred by the statute of limitations as a result.  The Court rejected this argument in the March 2006 order, as well as in an earlier order issued on June 27, 2005.

As those orders explained, the original 1997 indictment included mail-fraud and securities-fraud counts, just as the third superseding indictment included mail-fraud and securities-fraud counts.  Both the original indictment and the final indictment were based on the same facts and allegations.  At most, the third superseding indictment added a new legal theory.  This is not a debatable issue.

### E.   JURY INSTRUCTION ISSUES.

Defendant lists a litany of instructions that either should have been given or improved upon.  In particular, defendant contends that jury instructions 24 through 27 were flawed because no instruction was given as to defendant's immunity from guilt if he acted in "good faith" and because these instructions invaded the province of the jury.  Instructions 24 through 27 provided as follows (Final Charge at 11–12):

24.

You have heard evidence that the limited partnership interests in Fund I and Fund II were offered to investors during certain "offering periods." The defendant had a continuing duty to disclose material information that he received or became aware of prior to the close of each offering period. The duty to supplement ended when the offering period ended.

For example, if, after a private placement memorandum is already in circulation, the issuer learns that it is false or misleading in light of subsequent events, then the issuer must cease using it to raise money unless a supplement is added to the private placement memorandum that cures the false or misleading statement or omission. While such a supplement does not necessarily need to be in writing, it must be communicated to investors by the same or an equally effective means as the initial private placement memorandum. In other words, the disclosure of further information must be complete, accurate and sufficiently clear to cure the false or misleading statement or omission.

25.

Private placement memoranda often include financial statements prepared on some earlier date. If the issuer knows that subsequent to the operative date of a financial statement, a material adverse financial event affected the company or individual covered by the statement, then the issuer must, under the federal securities laws, disclose the material adverse financial information in the private placement memorandum. On the other hand, there will always be some changes after the operative date; it is unnecessary to disclose immaterial changes. It is up to you do decide what, if any, material changes occurred in this case.

26.

You have also heard evidence that Mr. Hickey and others entered into a settlement agreement with Wells Fargo Bank. The confidentiality provision contained therein did not relieve Mr. Hickey of his duty to make any required disclosures to investors. Put differently, if you find that any information that was made "confidential" by this settlement needed to be disclosed in order to cure any materially false or misleading statements or omissions, then this disclosure was required despite the confidentiality provision. This applies both to the mail fraud and the securities fraud counts.

27.

You have heard that the private placement memoranda warned of certain risks of investment. If you find beyond a reasonable doubt that a private placement memorandum was materially false or misleading, it would not be a defense to any charge herein that the memorandum contained such warnings. You can, however, consider such warnings in determining whether defendant intended to mislead anyone.

Defendant's argument lacks merit. *First*, defendant is incorrect that the Court neglected to inform the jury about immunity for good faith. Instruction 20 informed the jury that in order

16

**United States District Court**
For the Northern District of California

to be convicted of mail fraud, the jury had to find that "defendant acted with the intent to defraud" (*id*. at 9).  In turn, instruction 21 stated that "an intent to defraud is an intent to mislead, deceive or cheat.  The focus is on the mental state of the defendant.  *You should consider all the evidence to determine whether you can infer that defendant acted with fraudulent intent*" (*id*. at 10) (emphasis added).  Likewise, instruction 22 explained that in order for defendant to be guilty of securities fraud, defendant must have "acted for the purpose of defrauding buyers or sellers of securities" (*ibid*.).  Clearly, as to both mail fraud and securities fraud, a good-faith intent on the part of defendant would have prevented the imposition of guilt.  The jury obviously found that defendant did not act with good faith.

*Second*, as to imposition on the role of the jury, defendant is again mistaken.  Contested instructions 24 through 27 merely explained points of law that might have otherwise confused the jury.  The instructions did not rule on particular facts presented at trial.

It must be emphasized that two rounds of proposed instructions were presented to counsel and objections to the instructions were heard from both parties.  Defendant objected to instructions 24 through 27, although not on the untenable theories now asserted.  Regardless, the final charge to the jury contained adequate and agreed-upon instructions on the very issues that defendant now attacks.  The jury was properly informed as to what it needed to find to convict defendant on all counts.  The jury did so.  Bail is not warranted for any issue relating to the jury instructions.

### F.    EXCLUSION OF THE TESTIMONY OF DENNIS RICE AND STEPHEN ROULAC.

Defendant challenges the Court's pre-trial limitations on the testimony of two defense experts, Dennis Rice and Stephen Roulac.  Both experts actually testified at trial.  The issue concerns only limitations on the scope of their testimony.  This challenge is not tenable.

The Court's September 2005 order regarding pretrial motions ruled that certain topics covered in Rice's expert report were off limits, including that Rice was not testify to what the law is and Rice was not to testify as to the state of mind of the defendant.  Accordingly, at trial, the Court sustained objections to questions about Rice's legal conclusions about the security properties and about the guarantee disclosures.  The exclusion of this testimony was proper

**United States District Court**
For the Northern District of California

1  because Rice, as an expert, was not entitled to usurp the function of the Court or of the jury.

2  *See, e.g.*, *United States v. Weitzenhoff*, 35 F.3d 1275, 1287 (9th Cir. 1993).

3       Defendant likewise attacks the exclusion of certain evidence contained in the report of

4  defense expert Stephen Roulac.  The pretrial order ruled out certain of Roulac's proposed

5  testimony on why the ventures failed.  Roulac's expert report suggested that the investment

6  schemes failed because of intervention by the SEC in September 1994.  By that date, the funds

7  were under the control of a court-appointed receiver, *not* Hickey.  The post-receivership

8  viability was irrelevant to defendant's fraud while he controlled the funds.  Whether the funds

9  ultimately could have been salvaged by the receivership was irrelevant to whether defendant

10  knowingly made misrepresentations to investors while he was in charge.  The exclusion was

11  proper.

            **G.**     **TESTIMONY OF JANICE HARWELL.**

13       Defendant makes the untenable argument that the Court erroneously allowed evidence

14  of the Wells Fargo settlement via the testimony of Janice Harwell, Wells Fargo's outside

15  counsel.  The Court rejected defendant's motion *in limine* to exclude Harwell's testimony in its

16  September 2005 pre-trial order.

17       According to defendant, Harwell unnecessarily and improperly testified about the

18  contents of certain documents relating to the Wells Fargo litigation settlement, including

19  testifying about the agreement itself and about a declaration that defendant Hickey provided to

20  Wells Fargo indicating that he was deeply in debt.  Defendant contends that any testimony

21  offered by Harwell could have been introduced by admitting the documents into evidence and

22  by stipulating to the facts contained in those documents.

23       It is true that Harwell provided testimony about the Wells Fargo litigation documents.

24  Her testimony, however, was proper and necessary for the jury to fully grasp the content of the

25  documents.  Harwell, for example, discussed the different accounting methods purportedly used

26  by defendant to calculate the prospectus guarantee and the Wells Fargo declaration.  Harwell

27  was a competent witness to testify about the discrepancy.  The jury was entitled to look to her

28  testimony to draw negative inferences about the veracity of defendant's guarantee in the

prospectus.  In short, evidence of the Wells Fargo litigation, as articulated by Harwell, was highly probative to the issue of whether defendant lied to investors about his net worth in the private placement memoranda.  The admission of her testimony was proper.

### H.    SUFFICIENCY OF THE EVIDENCE.

This Court's March 2006 order addressed in great detail the overwhelming sufficiency of the evidence presented during trial.  Defendant presents no arguments to suggest that he has a substantial attack on the sufficiency of the evidence for appeal.  This order therefore incorporates the March 2006 order's analysis, that insurmountable evidence supported defendant's conviction.

During the hearing on the instant motion, defense counsel argued that the evidence was insufficient because the operative indictment charged that Fund I and Fund II comprised a unified scheme, whereas the evidence at trial failed to the link the two funds.  On the contrary, as explained in the March 2006 order, the evidence at trial made glaringly apparent that defendant devised an indivisible pyramid scheme, using the investments to Fund II to prop up Fund I, in order to deceive investors and continue the flow of money into the scheme.  The trial evidence bore out the allegations in the operative indictment and did not materially deviate therefrom.

### I.    *DOGGETT* ISSUE.

Defendant cites *Doggett v. United States*, 505 U.S. 647 (1992), for the proposition that the delay in bringing counts 12 and 13 of the third superseding indictment to trial was impermissible.  Counts 12 and 13 were securities-fraud counts that related back to the original indictment.  Because of this relation back, defendant argues, an improper amount of time passed prior to bringing these allegations to trial.

This argument lacks merit for much of the same reason defendant's Speedy Trial Act argument lacks merit.  Defendant and his counsel caused almost all of the lengthy delay between initial indictment and trial.  *Doggett* applies when the delay is attributable to the negligence of the government.  *United States v. Gregory*, 322 F.3d 1157, 1163 (9th Cir. 2003). Moreover, *Doggett* applies when defendant has suffered actual prejudice as a result of the delay.

United States District Court<br>For the Northern District of California

*Ibid.*  Here, defendant benefitted from avoiding the imposition of a sentence for many years as a result of the delay he and his counsel caused.  The government was not negligent.

### J.   *OMER* ISSUE.

Defendant relies on *Omer v. United States*, 395 F.3d 1087 (9th Cir. 1994), for the proposition that when an indictment fails to allege an element of an offense, and defendant raises the issue before trial, a court must dismiss the insufficient counts.  Defendant contends that this rule should have applied to the mail-fraud counts (counts 3–11), because the operative indictment failed to allege that the mailings were incident to an essential part of the scheme.

As defendant concedes, however, the third superseding indictment *did* list the significant mailings.  It appears that defendant's principal contention is that the mailings were listed in a chart rather than in the text of the indictment.  The listed mailings were at least incidental to the fraud perpetrated by defendant.  The Supreme Court, in a case cited by defendant, explained that no more is required of the government:

> To be part of the execution of the fraud, however, the use of the mails need not be an essential element of the scheme.  It is sufficient for the mailing to be "incident to an essential part of the scheme," or "a step in [the] plot."

*Schmuck v. United States*, 489 U.S. 705, 710–11 (1989) (internal citations omitted).  Defendant does not articulate a substantial issue relating to the sufficiency of the allegations regarding the mailings.

### K.   *GONZALEZ-LOPEZ* ISSUE.

Finally, defendant cites the recent Supreme Court decision *United States v. Gonzalez-Lopez*, __ U.S. __, 2006 WL 1725573 (June 26, 2006), for the proposition that he was deprived his right to select counsel.  It is true that *Gonzalez-Lopez* announced the rule:

> Where the right to be assisted by counsel of one's choice is wrongly denied . . . it is unnecessary to conduct an ineffectiveness or prejudice inquiry to establish a Sixth Amendment violation.

*Id*. at * 5.

The main problem with defendant's argument is that, as a threshold matter for the *Gonzalez-Lopez* rule to apply, a court must have "wrongly" denied defendant's choice of counsel.  As noted above, on September 4, 2004, this Court refused to grant defendant a stay of

the criminal proceedings for six months *or more* so that Attorney Cohen could seek rehabilitation for his alcohol dependence.  It is important to emphasize that Attorney Cohen did not (and could not) represent to the Court that at the end of his rehabilitation, he would be prepared to resume representation of defendant.  To the contrary, the Court asked expressly if Attorney Cohen could make such a commitment and the answer was an express *no*.  Significantly, it was unclear when — *if ever* — Attorney Cohen would be able to resume participation as defense counsel.  Given the already extended time elapsed since the underlying criminal ventures, the risks of losing witnesses, losing evidence, and having memories fade became extremely important considerations.

Indeed, Attorney Cohen admitted that his future in the case was uncertain by making, in the alternative to his request for a stay for alcohol rehabilitation, a request to withdraw as counsel.  The September 2004 order granted Attorney Cohen's *own* request to withdraw.  Thus, it is actually true that the Court did not *deny* defendant's choice at all, let alone deny it wrongly.  *Gonzalez-Lopez* is, therefore, inapplicable.

In summary, defendant has not presented a single issue of substance warranting bail pending defendant's two appeals.

### 4.   LIKELIHOOD OF REVERSAL OR NEW TRIAL.

"The term 'substantial' defines the level of merit required in the question presented, and the phrase 'likely to result in reversal [or] an order for a new trial' defines the type of question that must be presented."  *Montoya*, 908 F.2d at 450 (internal citation omitted).  This order need not even address the "likelihood" prong if the issues are deemed insubstantial.  *Handy*, 761 F.2d at 1283.  As stated above, this order so finds that no substantial issues are presented.

Nevertheless, it is worth noting that *Handy* requires that bail only be granted pending appeal if the substantial issue raised by defendant would "result in reversal or an order for a new trial of *all counts on which imprisonment has been imposed*."  *Ibid*. (emphasis added).  Most of the litany of purportedly substantial issues listed by defendant in his instant motion address only certain counts.  Defendant was convicted on numerous counts of both mail fraud

and securities fraud.  Purported infirmities that go only to certain counts but not all of them,
even if debatable, would not justify affording defendant bail pending appeal.

There is no fairly debatable issue raised that would require vacating the conviction of all
counts.  Moreover, the appeal will raise no single issue or even a combination of issues that are
fairly debatable that, even if successful, would materially affect the length of sentence.

**CONCLUSION**

For the foregoing reasons, defendant's motion is **DENIED**.


**IT IS SO ORDERED.**


Dated:  July 6, 2006

_____
WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

**United States District Court**
For the Northern District of California

22