# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## MOTION, PURSUANT TO SECTION 2255 OF TITLE 28 UNITED STATES CODE

### ATTACKING A SENTENCE IMPOSED BY THAT COURT

UNITED STATES OF AMERICA

    VS.

John A. Hickey

CASE NO.
(To be supplied by the
Clerk of the District Court)

(name of movant)
(Full name under which you
were convicted)

---

### INSTRUCTIONS-READ CAREFULLY

In order for this motion to receive consideration by the District Court, it shall be in writing (legibly handwritten or typewritten) by the Movant, under penalty of perjury, and it shall set forth in concise form the answers to each applicable question. If necessary, Movant may finish his answer to a particular question on the reverse side of the page or on an additional blank page. Movant shall make it clear to which question any such continued answer refers.

Since every motion under Section 2255 of Title 28, United States Code, must be made under penalty of perjury, any false statement of a material fact therein may serve as the basis of prosecutions and conviction for perjury. Movant should therefore exercise care to assure that all answers are true and correct.

If the motion is made in forma pauperis, it shall include an affidavit (page 6 of this form) setting forth information which establishes that the Movant will be unable to pay the fees and costs of the 2255 proceedings. When the form is completed, the <u>original and 2 copies</u> shall be mailed to

1

the Clerk of the District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, CA 94102.

1. Place of detention _____ Taft, California _____

2. Name and location of Court which, and name of judge who, imposed sentence _____
   Northern District of California (San Francisco) Hon. William Alsup

3. The indictment number or numbers (if known) upon which the offense or offenses for which sentence was imposed.:

   (a) __ 18: 1341 & 2-- Mail Fraud & aiding & abetting _____
   (b) __ 15: 78j & 78ff, 18:2-- Securities fraud & aiding & abetting
   (c) __ 15: 78j(b) & 78ff, 18:2--Securities fraud * aiding & abetting

4. The date upon which sentence was imposed and the terms of the sentence:

   (a) __ March 16, 2006  60 months, 3 yrs sueprvision _____
   (b) __ March 16, 2006 97 months, 3 yrs. supervision _____
   (c) __ March 16, 2006 97 months, 3 yrs. supervision _____

5. Check whether a finding of guilty was made:

   (a) after a plea of guilty _____
   (b) after a plea of not guilty _____ XX _____
   (c) After a plea of nolo contenders _____

6. If you were found guilty after a plea of not guilty, check whether that finding was made by

   (a) a jury _____ XX _____
   (b) a judge without a jury _____

7. Did you appeal from the judgment of conviction or the imposition of sentence? __ yes __

8. If you answered "yes" to question 7, list

   (a) the name of each court to which you appealed:

   I     ___ Ninth Circuit Court of Appeal _____
   11    ___ Supreme Court of the United States _____
   111   _____

   (b) the result of each such court to which you appealed:

2

I     Affirmed

11     Cert Denied

111

(c) the date of each such result:

I     9/2/09  Petition En Banc denied 12/9/09

11     April 19, 2010

111

(d) If known, citations of any written opinions or orders entered pursuant to such results:

I     580 F3d 922

11

111

**9.** State concisely the grounds on which you base your allegation that the sentence which was imposed on you is invalid.

(a)    See Attached Points & Authorities

(b) _____

(c) _____

10. State concisely and in the same order the facts which support each of the grounds set out in (9):

(a) \_\_\_\_ See Attached Points and Authorities

(b) _____

(c) _____

3

_____

_____

11. Have you previously filed petitions for habeas corpus motions under section 2255 of Title 28, United States Code, or any other applications, petitions or motions with respect to this conviction? ___ No ___

12. If you answered "yes" to (11), list with respect to each petition, motion or application

    (a) the specific nature thereof:

    I

    11

    111

    (b) the name and location of the court in which each was filed:

    I

    11

    111

    (c) the disposition thereof:

    I

    11

    111

    (d) the date of each disposition

    I

    11

    111

    (e) if known, citations of any written opinions or orders entered pursuant to each such disposition:

    I

    11

    111

13. Has any ground set forth in (9) been previously presented to this or any other federal court by way of petition for habeas corpus, motion under section 2255 of Title 28, United States Code, or any other petition, motion or application? _____ No _____

14. If you answered "yes" to (13), identify

    (a) which grounds have been previously presented:

I _____

11 _____

111 _____

(b) the proceedings in which each ground was raised:

I _____

11 _____

111 _____

15. Were you represented by an attorney at any time during the course of

(a) your arraignment and plea?     Yes

(b) your trial, if any?     Yes

(c) your sentencing?     Yes

(d) your appeal, if any, from the judgment of conviction of the imposition of sentence?
Yes

(e) preparation, presentation or consideration of any petitions, motions or applications
with respect to this conviction, which you filed?     Yes

16. If you answered "yes" to one or more parts of (15), list

(a) the name and address of each attorney who represented you:

I     David Cohen: 300 Montgomery St. # 660 San Francisco, Ca 94104

11     Joseph Russonello: 450 Golden Gate Ave., San Francisco 94102

111     Ezekiel E. Cortez: 1010 Second Ave. # 1850, San Diego 92101

WHEREFORE, movant prays that the Court grant movant relief to which he may be

entitled in this proceeding.

Signed under penalty of perjury ___ Ezekiel E. Cortez ___ at San Diego, California

___ 4/15/11 ___
Date                                    Signature of Movant

5

EZEKIEL E. CORTEZ
CA Bar No. 112808
The Executive Complex
1010 Second Avenue, Suite 1850
San Diego, CA 92101
Tel (619) 237-0309: Fax (619) 237-8052
lawforjustice@aol.com

**Pro Bono** Attorney for Petitioner: John A. Hickey

## THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN A. HICKEY, | ) **Cv. Case No.** |
| Petitioner-Defendant, | ) **97CR0218-WHA** |
| v. | ) **PETITIONER'S POINTS AND** |
| | ) **AUTHORITIES IN SUPPORT OF** |
| UNITED STATES OF AMERICA, | ) **PETITION FOR A WRIT OF** |
| Respondent-Plaintiff. | ) **HABEAS CORPUS PURSUANT** |
| | ) **TO 28 U.S.C. § 2255** |

Petitioner, John A. Hickey (Mr. Hickey), hereby files these *preliminary* points and authorities to supplement the form required by this Court for his prophylactic[1] Petition for a Writ of Habeas Corpus, filed pursuant to 28 U.S.C. § 2255.   The undersigned *Pro Bono* counsel had little notice that Hickey would be unable to draft and file this *habeas* on his own without counsel for this matter.   Therefore, counsel has taken this *pro bono*

---

[1] The one-year statute of limitations for this Petition to be timely filed under the 28 U.S.C. § 2255 (f) is April 19, 2011.

---

*Petitioner's Points and Authorities in Support of Petition for a Writ of Habeas Corpus, 28 USC 2255. CV ——— .*

representation on short notice, reserving the right to supplement these Points and Authorities and to request appointment of counsel, if appropriate, at a later time.  This Court has already found Hickey to be indigent.

## INTRODUCTION

This is a Petition for a Writ of *Habeas Corpus* seeking to vacate Mr. Hickey's convictions and sentences because his trial counsel prejudicially deprived him of the effective assistance of counsel guaranteed to him by the Sixth Amendment to the United States Constitution.   See, *Strickland v. Washington,* 466 U.S. 668 (1984).   Such deprivation also resulted in clear prejudice to Hickey, as will be developed *infra*.

The two key areas where Hickey was prejudicially deprived of the effective assistance of counsel are the following:

> 1. ***Statute of Limitations for the Securities Fraud Counts.***   For several years, Hickey's first trial counsel failed to move to dismiss the original indictment charging the securities fraud violations and specifically that relative to Fund I, despite the prosecutor's filing of Second and Third Superseding indictments, omitting these critical counts.   Trial counsel's failure to so move allowed the first indictment to remain active,

---

*Petitioner's Points and Authorities in Support of Petition for a Writ of Habeas Corpus, 28 USC 2255. CV ——— .*

2

thereby tolling the statute of limitations for years against Hickey for those counts. His subsequent trial counsel compounded the error by failing to raise the statute of limitations as a defense before and during trial, contrary to *United States v. Lo*, 231 F.3d 471, 480 (9th Cir. 2000) and *United States v. LeMaux*, 994 F.2d 684, 689 (9th Cir. 1993). This, despite counsel having filed a pretrial motion to dismiss these very counts on a different, unnecessarily very narrow tolling statute of limitations argument. Of this, even the Ninth Circuit Court of Appeals noted, "The statute of limitations is an affirmative defense that is waived if it is not raised at trial, so ***Hickey forfeited this argument.***" *United States v. Hickey*, 580 F.3d 922, 929, footnote 1 (9th Cir. 2009) (emphasis added).

2. ***Restitution Order***. Hickey's trial counsel failed to challenge this Court's determination of Hickey's financial ability at the time of sentencing and allowed a restitution Order of a whopping $17,454,000.00 go unchallenged when counsel had, among other reliable evidence showing Hickey's continuing indigent status, a vast amount of sealed documents at his disposal from protracted proceedings before the Magistrate Judge in which the Government

---

*Petitioner's Points and Authorities in Support of Petition for a Writ of Habeas Corpus, 28 USC 2255. CV —— .*

*unsuccessfully* challenged Hickey's indigent status.  Of this, the Ninth Circuit Court of Appeals noted –"The district court ordered Hickey to pay restitution of $5,000.00 per quarter while incarcerated and $500,000 per month upon release."  The Court then noted that "[Hickey's counsel] did not object to the restitution schedule at trial ....." *Hickey* at 932.

Mr. Hickey hereby requests leave to supplement his Petition.

## I.
## CONTEXT OF INEFFECTIVE ASSISTANCE OF COUNSEL

### 1. *Hickey's CJA Appointed Attorney David Cohen*

At the very outset, Mr. Hickey notes that this Court is very familiar with the background of this case.  This Court received and handled this criminal case from February 17, 2004 through pretrial motions, an interlocutory appeal, through trial and eventually sentencing which it held on March 16, 2006.

As a telling prelude to the issues developed here, Mr. Hickey invites this Court's attention to the Court's very own comments and observations, critically relevant to the Ineffective Assistance of Counsel (IAC) issues here presented, made during a hearing for yet one more motion to continue before this Court on August 4, 2004, to yet again continue the fast approaching trial.

---

*Petitioner's Points and Authorities in Support of Petition for a Writ of Habeas Corpus, 28 USC 2255. CV —— .*

4

Hickey's pretrial counsel at that time – David Cohen – was making the motion to continue.

At that time, CJA[2] Attorney Cohen asked for yet one more continuance of the approaching trial date or, surprisingly, in the alternative to withdraw from the case because he was going to check himself into an alcohol rehabilitation center. Important to this Petition, by that advanced point in the case, Mr. Cohen had continuously represented Hickey for approximately ten years - from 1994 in the closely related SEC matter and later in this criminal case.

After considering all of the evidence and arguments by counsel presented over three separate hearings, this Court made the following critically relevant findings about Attorney Cohen:

> The Court:
> And the ruling is as follows. That, Mr. Hickey, you are entitled under the Sixth Amendment to competent and effective counsel. Right now *the court makes the finding*, based on everything that Mr. Cohen has said and the last hearing that we had when Mr. Braun came *and Mr. Cohen was hospitalized*, and based on what Mr. Cohen has said is his prognosis and course of treatment, the soonest he can be ready, even then he's not certain, *the court makes a finding Mr. Cohen is not capable and is not to be an*

---

[2] Criminal Justice Act. The Court found Mr. Hickey indigent and Attorney Cohen was appointed to represent him for years.

---

*Petitioner's Points and Authorities in Support of Petition for a Writ of Habeas Corpus, 28 USC 2255. CV —— .*

1

2

> ***effective counsel for you, at least, in the next six months
> and maybe for a longer period of time than that.***

3    Exhibit A, Reporter's Transcript of hearing on August 3, 2004 at pgs.

4

5    12-13, lines 18-25 and 1-3, respectively) (emphasis added).  Understandably,

6    this Court relieved ineffective, embattled Attorney Cohen from further

7

8    representation of Mr. Hickey.

9    Later, illuminating the IAC issues here developed, this Court would

10

11   make the following observations in its Order denying Mr. Hickey's Rule 29

12   motion for judgment of acquittal and motion for a new trial made by his

13

14   substituted counsel Joseph Russoniello:

15

16

17

18

19

20

21

> As the public record herein reveals, attorney Cohen ***was
> suffering from the effects of alcoholism*** and wanted six
> months of treatment, if not more, ***he had developed an
> almost unbroken string of missed deadlines, a litany of
> frivolous and near frivolous motions, and was largely
> responsible in the court's view, for the delay in ultimately
> bringing the case to trial***, the non-colorable interlocutory
> appeal being a prime example.

22

23   Exhibit B, Reporter's Transcript of hearing on motions on March 15,

24

25   2006 at pg. 45.  This Court did not make any inquiry regarding how long

26   Attorney Cohen had been "suffering from the effects of alcoholism."  This

27

28   Court, however, did in fact note the extensive, questionable conduct of

29   Attorney Cohen, as noted in the above-quoted passage in this Court's

30

comments about "*unbroken string of missed deadlines, a litany of frivolous and near frivolous motions, and was largely responsible in the court's view, for the delay in ultimately bringing the case to trial.*" (Emphasis added.)

Similarly, as part of its ruling on the interlocutory appeal, characterized by this Court as a "non-colorable interlocutory appeal", the Ninth Circuit Court - before which Attorney Cohen likewise *successfully* developed an unbroken string of motions for extensions of time - explicitly stated:

> Almost five years after he was first indicted, John A. Hickey filed a number of motions in the district court *on the eve of trial*. When the motions were denied, Hickey filed two interlocutory appeals, basing appellate jurisdiction on the collateral order doctrine. We determine that none of Hickey's contentions raises a colorable claim under the collateral order doctrine and dismiss his appeals for lack of jurisdiction.

*Hickey*, 367 F.3d 888, 889 (9th Cir. 2004) (emphasis added).

The above-quoted passages raise the very clear presumption that Mr. Hickey's CJA lawyer of many years was affected by alcoholism or other substance abuse for a substantial time as he "represented" Mr. Hickey before

---

*Petitioner's Points and Authorities in Support of Petition for a Writ of Habeas Corpus, 28 USC 2255. CV ----- .*

7

this Court.   It was Attorney Cohen's presumed ineffective pretrial work product that Hickey's subsequent trial lawyer - Joseph Russoniello[3] – inherited.

### 2. *Hickey's Retained, Later Appointed, Trial Attorney Joseph Russoniello.*

Approximately one month after this Court relieved CJA Attorney David Cohen from any further representation of Mr. Hickey, on September 21, 2004 Cooley Godward, LLP Partner Joseph Russoniello appeared at a hearing before this Court for Mr. Hickey and, because of unanticipated financial setbacks, notified the court that he would not be representing Mr. Hickey unless proper financial assurances were satisfied by "other persons who would basically be prepared to underwrite this defense."   Exhibit C, Reporter's Transcript of hearing on September 21, 2004.   Several years earlier, and over the Government's   objection   and   concomitant   aggressive,   protracted   but unsuccessful litigation, the Magistrate Judge found Mr. Hickey to be indigent and appointed Attorney David Cohen to represent him in this case.

On September 28, 2004 Attorney Russoniello confirmed that financial arrangements had been finalized and that he was taking over as counsel of record for Mr. Hickey.

---

[3] At that time, Mr. Russoniello was senior partner at Cooley Godward, L.L.P. and former United States Attorney for the Northern District of California.

---

*Petitioner's Points and Authorities in Support of Petition for a Writ of Habeas Corpus, 28 USC 2255. CV —— .*

Earlier, on September 21, 2004 the Government filed a second superseding indictment alleging the same violations as the first superseding indictment, again omitting the securities and wire fraud counts that had been charged in the 77-page first indictment originally filed on July 16, 1997. With Russoniello now representing Mr. Hickey, on September 29, 2004, Hickey pleaded not guilty to that second *superseding* (third indictment) but failed to move for a dismissal of the prior indictments, which had remained on file still pending against Hickey for years.

Unexpectedly, on February 24, 2005 Mr. Hickey's new counsel, Attorney Russoniello, filed a motion to withdraw, just as Attorney Cohen had done earlier but for a different reason. Exhibit D.  Mr. Russoniello cited Mr. Hickey's lack of cooperation and the failure to pay his legal fees and expenses as the bases for withdrawal. Exhibit D, Points and Authorities, pg. 1. At this point, the trial had been scheduled to begin on May 9, 2005.

At a hearing on March 8, 2005 this Court denied the motion to withdraw and instead appointed Mr. Russoniello under the Criminal Justice Act because Hickey was *still* as indigent as the Magistrate Judge had previously found him to be.

Mr. Hickey will submit additional documents documenting the reasons for Attorney Russoniello's unsuccessful attempts to withdraw from the case,

revealing a total breakdown in communication with Hickey for months during the holidays. This breakdown in communication with Hickey left Russoniello with a mere six months to prepare for the upcoming trial which began September 23, 2005 in an extremely complex case that had a litigation history of approximately one decade.

On April 27, 2005 the Government secured the Third Superseding indictment, adding the two securities fraud counts - counts 12 and 13 - that had been left pending in the 1997 original indictment for years. This was the indictment upon which Mr. Hickey was tried approximately four short months later.

On May 24, 2005 Attorney Russoniello filed a motion to dismiss counts 12 and 13 because they "were brought well beyond the applicable five year limitations period and [were time-] barred." Russoniello asked that the counts be dismissed "with prejudice." Exhibit E, Motion to Dismiss, pg. 2. Surprisingly, Russoniello asked "in the alternative" that the Court order a bill of particulars, as if a bill of particulars would somehow save a time-barred charge. On June 27, 2005 the District Court denied Mr. Hickey's motion to dismiss counts 12 and 13 or for a bill of particulars.

Russoniello did not specify why the two securities fraud counts that he strongly challenged as time-barred by the statute of limitations would be saved

*Petitioner's Points and Authorities in Support of Petition for a Writ of Habeas Corpus, 28 USC 2255. CV ----- .*

10

by a mere bill of particulars.  It was as though Russoniello was not really sure of the facts of his case in making his motion to dismiss; to dismiss *with prejudice,* no less.  His lack of footing in this, *for him*, slippery, critical area would be revealed later at oral arguments for the hearing on his motion for new trial and judgment of acquittal held on March 15, 2006, developed below.

On November 18, 2005 the jury found Mr. Hickey guilty of eight counts of mail fraud and of the two counts of securities fraud.  On January 9, 2006 Attorney Russoniello filed the motions for judgment of acquittal or in the alternative for a new trial.  Exhibit F.  The Court eventually denied the motions on March 16, 2006 and sentenced Hickey to 97 months custody, 3 years of supervised release, imposed a $15,000 fine and significantly, ordered him to pay $17,454,000 in restitution.  Mr. Hickey was also ordered to reimburse the Criminal Justice Act for costs of his representation, despite the Court having found Hickey to have been indigent and had appointed Russoniello because the third party who was to provide Russoniello his fees passed away before doing so.  The funds for Hickey's representation were not coming from Hickey, an indigent, but from that third person.  As noted before, Hickey's indigent status had been the subject of an elaborate battle launched *unsuccessfully* by the Government.

---

*Petitioner's Points and Authorities in Support of Petition for a Writ of Habeas Corpus, 28 USC 2255. CV ----- .*

On March 15, 2006 at the oral arguments for Russoniello's motions for

judgment of acquittal or in the alternative for a new trial, Attorney Russoniello

revealed his lack of grasp of the true facts and nature of the securities fraud

charges he had just tried to a jury:

> **MR. RUSSONIELLO:** This [the securities fraud charges] wasn't charged as a conspiracy with continuing conduct for [SIC] beyond a specific point.  This was charged as substance [SIC] of offenses occurring specifically with regard to funds that had sort of terminus odd random dates, specifically the end of the Fund One was the -- was the full funding of that -- of that particular investment which happened with the monies that were raised from one of the regional vice-president's fathers that was just done just before June 28th, 1992.

> **THE COURT:** Well, I don't remember how it was pled, but I'm still thinking that the law is that if there were cover-up payments made in the Charles Ponzi scheme way of things that, that would ordinarily be enough to continue the crime. But let -- all right.
> But if all that's true -- even if all that's true, *at the close of the case and when you knew all of that evidence, I gave -- we had many charging conferences here before the jury was charged, and we went over at least twice, I think maybe three times, proposed instructions on at least two of those occasions, it said right there, I told the jury, and you had no objection to it. This case is not barred by the statute of limitations. So you knew at that point what all the evidence was and how the evidence came in and yet, you raised no objections*.

> **MR. RUSSONIELLO:** Well, as I said, there's a difference between the waiver of the instruction and a forfeiture of this particular defense under the cases. And it isn't because there may have been in purposes of the sake

1    of argument assume a waiver of the -- of the instruction
2    objection. It does not save the conviction on that particular
3    count if the statute of limitations, in fact, has been
     violated, and I submit that it has.

4
5    **THE COURT:** Why -- why wouldn't it?

6    **MR. RUSSONIELLO:** Well, because it's statutory. In
7    effect, it's convicting someone for an offense barred by the
     statute of limitations. *It's not just a mere technical*
8    *defense to be raised, but it's almost jurisdictional.* If the
9    statute of limitations if an indictment is brought in
10   violation of the statute of limitations, does the Court have
     the jurisdiction to continue the proceedings under that
11   particular statute?[4]
12   I submit, in this case, what permitted the Court to continue
13   is the fact that it was operating under an indictment which
     alleged the continuum of conduct without any separation,
14   beginning in about 1991 through September of 1994.
15   That's the way the indictment was pled.

16
17   **THE COURT:** Isn't that the way the evidence came in?

18   **MR. RUSSONIELLO:** But what the Government did at
19   the conclusion of the case was to say that these were two
20   separate -- *it abandoned the Ponzi scheme approach*, for
     all intents and purposes, never mentioned Ponzi scheme or
21   any thing of the sort.

22
23   **THE COURT:** Maybe the Government didn't think the
     jury would know who Ponzi was, *but I don't remember*
24   *them abandoning it*. I thought I heard them say in the
25   closing argument that there would be payments made in
26   Fund Two to pay for number one and –

27
28   _____

29   [4] Russoniello had not made this "jurisdictional" argument in his motion to
30   dismiss pretrial at all.

_____

*Petitioner's Points and Authorities in Support of Petition for a Writ of Habeas Corpus, 28 USC*
*2255. CV ——— .*

13

**MR. RUSSONIELLO:** That is as to Fund Two. Funds received from Funds Two used to pay Fund One. But no evidence of proceeds raised from Fund One to pay Fund Two. The Fund One activities were supported by the substantive mail fraud counts, two of which were dismissed because of the statute of limitations, the third abandoned by the Government at the close of its case because it had failed to put in evidence of the mailing.

The only thing left with regard to the Fund One, they said, was Count 12, the securities fraud count. But they did not suggest that any of the money raised from Fund One was used to pay Fund Two expenses. And that would have been the evidence of this sort of continuum, as you suggest. Now, that's not true for Fund Two, where Fund Two clearly, the evidence was that monies raised from Fund Two were used to pay investors in Fund One.

**THE COURT:** The thing is, *if you had raised this at the charging conference, then we would have had an opportunity to consider -- the Government could have proposed instructions on continuing conspiracy, continuing cover-up of the – and because none of that was raised, that opportunity was passed and it wasn't argued that* -- actually, I don't remember for sure how it was argued. I did not -- I don't now remember hearing the Government create *these surgically separate stories*. I did think it was presented as one continuing scheme, so.

Exhibit B, Reporter's Transcript of hearing on March 15, 2006, pages 23-26

(emphasis added).

However, the Court then asked the Government: "Let's hear from whoever's going to argue for the Government."   Revealing Russoniello's

lack of grasp of the law in this area and specific facts of the case, the Government replied as follows:

> **MR. STESKAL:** Thank you, your Honor. I'd like to begin with the statute of limitations issue, and I'm going to try to keep my comments focused on the defense's arguments. The defense and I think with the place to begin with the statute of limitations is on the waiver issue. *And the defense's response to that is to the statute of limitations is, let's use their words, almost jurisdictional and suggesting that it can't be waived; that is not the law.*
> There are two cases to look at, it's *United States versus LaMux,* and *United States versus Lo,* both are cited in my papers. And both those cases hold that failure to comply with the statute of limitations *is an affirmative defense,* which the defendant waives, if not raised at trial. Now, here the defense—

> **THE COURT:** Is that in [sic] criminal cases too?

> **MR. STESKAL:** They are both criminal cases, your Honor. And, then, the other case in this area is called Fuchs. It's one relied on by the defense. And there the Court did address a statute of limitations, arguments similar to one being raised here, but did so only after it was raised before trial through a pre-trial motion. In Lo, the Ninth Circuit distinguished Fuchs and how in that case, *because it was raised in a pre-trial motion*, that it wasn't waived.[5]
> *It was effectively raised at trial.* I think the facts were undisputed here, *and it's been no argument that the statute of limitations argument that's being made now has never before been raised in the history of this case.*

---

[5] Russoniello failed to raise this "jurisdictional" issue in his motion to dismiss pretrial, as noted above.

---

*Petitioner's Points and Authorities in Support of Petition for a Writ of Habeas Corpus, 28 USC 2255. CV —— .*

15

And, in fact, the facts here are much stronger than they are in the other cases because, as your Honor noted, we did have a jury instruction.

**THE COURT**: That would be saying a lot because in this case just about everything else in the history of the universe has been raised. *So if this one somehow got omitted, it is saying something.*

**MR. STESKAL**: I do think that's saying something. *And the statute of limitations has been an issue that's floated around in the case in various forms, but never made as this argument.* It's always been made as a relation-back argument which is what your Honor ruled on before, which is whether or not the superseding indictment that refinalized the -- resurrected the securities fraud claim related back to the earlier indictment. *That's not the issue that's being raised now. It's a different issue, different argument.*

**THE COURT**: All right. But of these cases, which one do you think is most on point, LaMux is that your –

**MR. STESKAL**: LaMux and Lo. Lo is particularly on point because what it does is it distinguishes Fuchs, which is the case relied upon by the defense. Fuchs held there was no waiver, but Lo said that the holding of Fuchs is limited to the -- is based on the fact that it was -- the issue was raised pretrial through a motion. *But the facts that we have here are different than those cases and, in fact, much stronger in support of a waiver argument because there was a statute of limitations instruction.* This is not a case where the defense *merely failed to raise the statute of limitations at the jury instruction conference*. In fact, we had an instruction. And the instruction was, *it's not a defense*. And the defense didn't object to that. So on those facts, it is a waiver. *If you're perplexed with an instruction that says, the statute of limitations is not a defense and you accept that*

---

1
2

***instruction as the valid statement of the facts of the laws
applied to this case, you waive the defense.***

3   Exhibit B, Reporter's Transcript of hearing on March 15, 2006, pages 28-31
4
5   (emphasis added). Essentially, the Government here made the very point
6   now raised by Hickey – that his trial counsel waived an obvious defense and
7
8   did so obviously working from their misunderstanding of the law and the
9   facts in this case.   Conduct that facially falls below the standard of
10
11  reasonableness.

12      The record of the trial also yields the clear picture that Hickey's trial
13
14  counsel failed to militate before and during the trial for facts supporting the
15  statute of limitations as an affirmative defense, leaving the Government's
16
17  case unopposed on this point and allowing it to argue that Fund I had not
18  been a "completed offense" until September 22, 1992, which is not so. This
19
20  argument by the Government was baseless for a variety of reasons, including
21  the following.
22

23      The record of the trial establishes clearly that the securities offered
24  here were distinct, separate and time-limited events and did not spill over
25
26  each other.   Each offering (Fund I and Fund II) *inter alia* had: (1) its
27  independent Private Placement Memorandum; (2) prepared by separate legal
28
29  counsel; (3) its own distinct offering period; (4) its independent ownership
30

*Petitioner's Points and Authorities in Support of Petition for a Writ of Habeas Corpus, 28 USC
2255. CV ——— .*

17

interest in separate limited partnerships; (5) different business plans; (6) different investors; (7) marketed in different states; (8) marketed by independent broker-dealers; and (9) separate assets. Indeed, the dismissed mail fraud counts were the alleged conduct that facilitated the alleged federal criminal "scheme."

Fund I did not cross over into Fund II and both were coupled with substantive counts of mail fraud. In fact, Counts One through Three and Twelve were tied to Fund I. But before the jury retired to deliberate, because throughout the trial no evidence was presented to support these foundational counts, the Government moved to dismiss Counts One – Three. Count Twelve was left on its own. Russoniello did not use these critical developments to seek a jury instruction on the statute of limitations because he failed to even present such affirmative defense.

Mr. Hickey respectfully asks to be allowed to provide additional facts in support of this issue at a later time. He also notes that there are several key documents filed in February 2005 by Russoniello under seal for which he will seek this Court's permission to provide it *ex parte* or under seal.

//

//

*Petitioner's Points and Authorities in Support of Petition for a Writ of Habeas Corpus, 28 USC 2255. CV ——.*

**3. *Facts Relative to Hickey's Continued Indigent Status at the Sentencing, When the Substantial Restitution and Payment Schedule Was Ordered Without Objection From Hickey's Lawyers.***

In its Opinion affirming Hickey's convictions, the Ninth Circuit Court noted the following:

> The district court ordered hickey to pay restitution of $5,000.00 per quarter while incarcerated and $500,000 per month upon release. ***Hickey did not object to the restitution schedule at trial***, so we review district court's finding for plain error. [Citation omitted] Hickey's position is essentially that his own non-compliance with the presentencing procedure means that the district court committed plain error. ***Hickey failed to complete the financial information requested by the Probation Office so the court had limited information about his financial situation.*** [Citation omitted] Nonetheless, the district court was aware that Hickey had previously paid $1.1 million in the SEC enforcement action after insisting that he was unable to pay and that he was involved in a $1 billion real estate project in San Francisco. Hickey has not demonstrated that the district court committed plain error when it laid out the restitution schedule.

*U.S. v. Hickey*, 580 F.3d 922, at 932 (9th Cir. 2009), emphasis added.

Clearly, Hickey's counsel failed to provide the Court, under seal or *ex parte*, the readily available evidence in the many sealed documents related to the Magistrate Judge's determination that Hickey was in fact indigent. But this Court knew this fact and all it needed was additional information from Russoniello to dispel the Court's views about the "$1 billion real estate

project in San Francisco" and the context of Hickey's payment "$1.1 million in the SEC enforcement action."

Indeed, at the hearing for Hickey's motions for new trial and judgment of acquittal, Russoniello asked the Court to continue the hearing and the sentencing to allow Hickey time to secure a different lawyer, to handle the motions filed by Russoniello but not the sentencing hearing. This Court noted as follows:

> **THE COURT:** All right. If this is a motion for continuance, it is denied. Here are the reasons: First, I just found out about this today. This is a very untimely proposition. The motions had been briefed. I have been working hard on this. I am up to speed. Everyone's up to speed. We have a number of people out here who have come to this hearing, perhaps victims who want to make statements. This is the day of sentencing.
> Number two, there is no lawyer at present. It's it's just speculation whether, within 10 days, we would have a new lawyer. And it seems odd to me that *Mr. Hickey having taken more than a million dollars from the United States and Criminal Justice Act, attorney's fees, and expert fees*, has suddenly got access to money to hire an appellate lawyer. And then the appellate lawyer wants to come in, or doesn't want to because we don't know who it is but Mr. Hickey would like him to come in and argue this motion that the United States has paid a lot of money for you to come up to speed, Mr. Russoniello, and argue, and you've done the briefs, and you're prepared to argue it, and you should argue it.

---

*Petitioner's Points and Authorities in Support of Petition for a Writ of Habeas Corpus, 28 USC 2255. CV ——— .*

Exhibit B, Reporter's Transcript of hearing on March 15, 2006, pages 3, 8 (emphasis added).

For Russoniello to have asked the Court to allow another attorney, possibly hinting that Hickey had retained such lawyer, to come in to selectively argue *only* the motions Russoniello as CJA attorney had prepared and filed, enabled this Court's beliefs about Hickey having access to funds because of the "$1 billion real estate project in San Francisco." Coupled with Russoniello's failure to provide the Court documentary evidence of Hickey's continued indigency and, this request to continue was a yet one more act of ineffective assistance of counsel.

Hickey will provide the Court, under seal, additional relevant financial documents which have been under seal.

## II.
### Hickey Was Denied his Right to the Effective Assistance of Counsel When his Lawyers Waived his Available Affirmative defense that the Securities Fraud Count for Fund I Was Barred by the Statute of Limitations

The Ninth Circuit Court of Appeals succinctly expressed the manner in which Hickey's trial counsel provided prejudicial ineffective representation to Hickey. The Court did this as it addressed one of Hickey's issues on appeal relative to the legal effect of a "Superseding Indictment."

In its Opinion in this case, the Court specifically said - "The statute of limitations is an affirmative defense that is waived if it is not raised at trial, so *Hickey forfeited this argument.*"   *United States v. Hickey*, 580 F.3d 922, 929 footnote 1 (9th Cir. 2009).   That Hickey indeed had available to him an affirmative defense in this critical area was conclusively established by the Government during the hearing on Hickey's motion for a new trial and for judgment of acquittal, held on March 15, 2006 detailed above.   There, the Government energetically stated of this issue:

> **MR. STESKAL**: LaMux and Lo. Lo is particularly on point because what it does is it distinguishes Fuchs, which is the case relied upon by the defense. Fuchs held there was no waiver, but Lo said that the holding of Fuchs is limited to the -- is based on the fact that it was -- the issue was raised pretrial through a motion. ***But the facts that we have here are different than those cases and, in fact, much stronger in support of a waiver argument because there was a statute of limitations instruction.***
> This is not a case where the defense ***merely failed to raise the statute of limitations at the jury instruction conference.*** In fact, we had an instruction. And the instruction was, ***it's not a defense.*** And the defense didn't object to that. So on those facts, it is a waiver. ***If you're perplexed with an instruction that says, the statute of limitations is not a defense and you accept that instruction as the valid statement of the facts of the laws applied to this case, you waive the defense.***

Exhibit B, Reporter's Transcript of hearing on March 15, 2006, pages 28-31 (emphasis added).

This very Court clearly answering Russoniello's misplaced arguments

that the Government had shifted its proof at trial and that he had not waived

this issue because it was jurisdictional and thus he could not waive it, noted

of this:

> But if all that's true -- even if all that's true, *at the close of the case and when you knew all of that evidence, I gave -- we had many charging conferences here before the jury was charged, and we went over at least twice, I think maybe three times, proposed instructions on at least two of those occasions, it said right there, I told the jury, and you had no objection to it. This case is not barred by the statute of limitations. So you knew at that point what all the evidence was and how the evidence came in and yet, you raised no objections*.

This Court added:

> **THE COURT:** The thing is, *if you had raised this at the charging conference, then we would have had an opportunity to consider -- the Government could have proposed instructions on continuing conspiracy, continuing cover-up of the -- and because none of that was raised, that opportunity was passed and it wasn't argued that* -- actually, I don't remember for sure how it was argued. I did not -- I don't now remember hearing the Government create *these surgically separate stories*. I did think it was presented as one continuing scheme, so.

Exhibit B, Reporter's Transcript of hearing on March 15, 2006, pages 23-26

(emphasis added).

a.    **Failure by Hickey's Counsel to Timely Move for Dismissal of the Original Indictment Was Also Prejudicial Ineffective Representation.**

In *United States v. Hickey,* 580 F.3d 922 (9th Cir. 2009), the Court specifically noted the well-established precedent applicable here and which every lawyer is presumed to know:

> .... It is ***well accepted*** that an indictment tolls the statute of limitations as to all charges contained in the indictment. United States v. Clawson, 104 F.3d 250, 250-51 (9th Cir.1996). Significantly, "[a]n original indictment remains pending until it is dismissed. . . ." United States v. Pacheco, 912 F.2d 297, 305 (9th Cir.1990), and multiple indictments may simultaneously be pending against the same defendant in the same case, United States v. Holm, 550 F.2d 568, 569 (9th Cir.1977) (per curiam).
>
> It follows from these cases that so long as the original indictment remains pending, a superseding indictment that omits a charge contained in the first indictment ***does not stop the tolling of the statute of limitations as to that charge***. The central question is whether Hickey was fairly on notice of the charges. As we explained in Pacheco, 912 F.2d at 305 (quoting United States v. Italiano, 894 F.2d 1280, 1283 (11th Cir.1990)).

*Hickey* at 929, emphasis added.   Rejecting one of Mr. Hickey's issues on appeal, the Court also noted:

> Under Federal Rule of Criminal Procedure 48(a), "the government may, with leave of the court, dismiss an indictment. . . ." [ ] The requirement that the government obtain leave of the court to dismiss would be superfluous if the government could, in effect, dismiss a charge by

simply omitting it from a subsequent indictment. Hickey's theory is premised on the view that the initial charges were no longer pending and had been "dropped" once they were omitted from the subsequent indictment. There is, however, no intermediate status in our case law between pending and dismissed. Either the charges remain pending or they have been dismissed, and the only way for the government to achieve dismissal is via leave of the court, which did not occur here. Hickey was fairly on notice that he could be tried for any of the offenses contained in the third superseding indictment because all of the indictments remained pending until trial, the factual predicate remained the same, and the charges were not substantially broadened.

The Court added that this clearly established law is the same throughout the land:

Our conclusion is consistent with case law from our sister circuits holding that the government may elect to proceed on any pending indictment, whether it is the most recently returned superseding indictment or a prior indictment. See, e.g., in addition to the Eleventh Circuit's opinion in Italiano cited above, United States v. Walker, 363 F.3d 711, 715 (8th Cir.2004) (both a superseding indictment and the original indictment remain pending and the government may go to trial on the original indictment); United States v. Vavlitis, 9 F.3d 206, 209 (1st Cir.1993) (an original indictment remains pending and can be used at trial even if a superseding indictment omits an element of a charged offense); United States v. Bowen, 946 F.2d 734, 736-37 (10th Cir.1991) (a superseding indictment does not invalidate a preceding indictment and the government may proceed to trial on any pending indictment); United States v. Drasen, 845 F.2d 731, 732 n. 2 (7th Cir.1988) ("It is well established that two indictments may be outstanding at the same time for the same offense if jeopardy has not

---

*Petitioner's Points and Authorities in Support of Petition for a Writ of Habeas Corpus, 28 USC 2255. CV ——— .*

attached to the first indictment. The government may then select the indictment under which to proceed at trial."); United States v. Stricklin, 591 F.2d 1112, 1116 n. 1 (5th Cir.1979) ("Since the original indictment apparently was never dismissed, there are technically two pending indictments against Stricklin, and it appears that the government may select one of them with which to proceed to trial."); United States v. Cerilli, 558 F.2d 697, 700 n. 3 (3d Cir.1977) (both an original and superseding indictment may be pending at the same time and the government may choose which to proceed to trial under). Because all of the indictments against a defendant remain pending unless formally dismissed (at least until jeopardy attaches), the statute of limitations remains tolled for all of the charges in prior indictments, even if subsequent indictments omit those charges.

*Hickey* at 929-930.

Therefore, the failure by Hickey's counsel to promptly make a motion to dismiss the original indictment thus allowing it to remain active, directly caused the tolling of the statute of limitations against Hickey and was prejudicial ineffective assistance of counsel.

The extensive colloquy detailed above of the arguments of Hickey's motions for new trial and for judgment of acquittal clearly establish an incompetent waiver of Hickey's defense that the Fund I securities fraud count was charged beyond the statute of limitations.  See, *United States v. LeMaux*, 994 F.2d 684, 689 (9th Cir. 1993) and *United States v. Lo*, 231 F.3d 471, 480 (9th Cir. 2000).

---

*Petitioner's Points and Authorities in Support of Petition for a Writ of Habeas Corpus, 28 USC 2255. CV ⸺ .*

Russoniello's misguided reliance on inaccurate facts and obvious misunderstanding of the applicable law, directly resulted in the jury having been told that Hickey did not have a statute of limitations defense at all.  Of this, there is no doubt as his very argument to this Court clearly showed:

> **MR. RUSSONIELLO:** Well, as I said, there's a difference between the waiver of the instruction and a forfeiture of this particular defense under the cases. And it isn't because there may have been in purposes of the sake of argument assume a waiver of the -- of the instruction objection. It does not save the conviction on that particular count if the statute of limitations, in fact, has been violated, and I submit that it has.
>
> **THE COURT:** Why -- why wouldn't it?
>
> **MR. RUSSONIELLO:** Well, because it's statutory. In effect, it's convicting someone for an offense barred by the statute of limitations. *It's not just a mere technical defense to be raised, but it's almost jurisdictional.* If the statute of limitations if an indictment is brought in violation of the statute of limitations, does the Court have the jurisdiction to continue the proceedings under that particular statute?

This Court's clear rejection of Russoniello's misguided argument was made in the following:

> **THE COURT:** The thing is, *if you had raised this at the charging conference, then we would have had an opportunity to consider -- the Government could have proposed instructions on continuing conspiracy, continuing cover-up of the – and because none of that was raised, that opportunity was passed and it wasn't*

*Petitioner's Points and Authorities in Support of Petition for a Writ of Habeas Corpus, 28 USC 2255. CV —— .*

> ***argued that*** -- actually, I don't remember for sure how it
> was argued. I did not -- I don't now remember hearing the
> Government create ***these surgically separate stories***. I did
> think it was presented as one continuing scheme, so.

Exhibit B, Reporter's Transcript of hearing on March 15, 2006, pages 23-26
(emphasis added).

## IV.
**Mr. Hickey was denied his right to the effective assistance of counsel.**

To prevail on an ineffective assistance of counsel claim, a petitioner

must show that "counsel's representation fell below an objective standard of

reasonableness." *Strickland v. Washington*, 466 U.S. 687 (1984). *See also*,

*United States v. Cronic*, 466 U.S. 648 (1984). Moreover, "In *Strickland,* this

Court made clear that 'the purpose of the effective assistance guarantee of

the Sixth Amendment is not to improve the quality of legal representation ...

[but] simply to ensure that criminal defendants receive s fair trial.'" *Cullen*

*v. Pinholster,* 563 U.S. ---, 131 S.Ct. 1388, WL 1225705, at *12 (U.S. April

4, 2011), Slip Opinion pages 16-17. This pronouncement from the high

Court couldn't be more apt. Here, Russoniello was, and still is, one of the

most respected, highly experienced federal criminal law practitioners

presumed to be capable of providing the highest "quality of legal

representation." Yet, failed to do so in this case and deprived Hickey of his absolute right to a fair trial.

After establishing that counsel's performance was deficient, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland* at 694. A "reasonable probability" is not preponderance but something less than that level of proof.

Title 28 U.S.C. § 2255(a) permits "[a] prisoner in custody under sentence of a court . . . claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution . . . " to "move the court which imposed the sentence to vacate, set aside or correct the sentence." This includes Sixth Amendment claims of ineffective assistance of counsel. Indeed, in *Massaro v. United States*, 538 U.S. 500, 504 (2003), the Supreme Court explicitly held that "an ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255."

The Sixth Amendment of the United States Constitution provides, in relevant part, that a person accused of a crime "shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. Amend. VI. To prevail on this, Hickey must establish: (1) that his counsel's performance was deficient and (2) that the deficient performance prejudiced him. *See,*

---

*Petitioner's Points and Authorities in Support of Petition for a Writ of Habeas Corpus, 28 USC 2255. CV ---- .*

*Strickland at* 687. To establish the former, Hickey must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment," and that, "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland* at 687-88. "More specific guidelines are not appropriate. . . . The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Strickland* at 688. *See also*, *Pinholster*, WL 1225705, at *12 (U.S. April 4, 2011), Slip Opinion at page 17.

Hickey must show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland* at 687. "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have

been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

Hickey's counsel failed to insure that the original indictment charging the securities fraud counts, for which he would later be convicted, was dismissed once the superseding indictments were filed. This failure was based upon utter ignorance of the well-established law cited in *Hickey* by the Ninth Circuit, noted above. To compound counsel's prejudicial failure, trial counsel totally failed to prepare, present and argue the readily available defense of statute of limitations for the count related to Fund I, and indeed, waived it – as conclusively noted above.

Counsel also deprived Hickey of his right to the effective assistance of counsel at sentencing when he totally failed to provide the Court readily available financial documentation that would have shown Hickey to be indigent. This prejudicial failure allowed the Court to believe that Hickey had access to millions of dollars and imposed a restitution and payment schedule that was beyond Hickey's ability to comply with.

---

*Petitioner's Points and Authorities in Support of Petition for a Writ of Habeas Corpus, 28 USC 2255. CV ——— .*

1  For these reasons, and those to be provided in Hickey's supplemental

2  to these Points and Authorities, he prays that his writ be issued and

3
4  convictions and sentence be vacated.

5
6                                    Respectfully Submitted,

7
8  Dated: April 15, 2011

9                                    Ezekiel E. Cortez
10                                   Attorney *Pro Bono* for
                                     John A. Hickey, Petitioner
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30

EZEKIEL E. CORTEZ
CA Bar No. 112808
The Executive Complex
1010 Second Avenue, Suite 1850
San Diego, CA 92101
Tel (619) 237-0309: Fax (619) 237-8052
lawforjustice@aol.com
**Pro Bono** Attorney for Petitioner: John A. Hickey

### THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF CALIFORNIA

JOHN A. HICKEY,                          )   **Cv. Case No.**
                                         )   **97CR0218-WHA**
     Petitioner-Defendant,   )
                                         )   **PROOF OF SERVICE**
     v.                      )
                                         )
UNITED STATES OF AMERICA,                )
                                         )
     Respondent-Plaintiff.   )
                                         )
_____)

I, the undersigned, hereby declare as follows:

1. I am over 18 years of age, a resident of the County of San Diego, State of California, counsel for the Defendant and that my address is 1010 Second Avenue, Suite 1850, San Diego, CA 92101;

2. That today I served Petitioner's Points and Authorities in Support of Petition for a Writ of Habeas Corpus Pursuant to 28 USC Section 2255 on opposing counsel by causing to be delivered by overnight mail via the United States Postal Service to the Office of the Clerk; and that I mailed a copy to Defendant.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: April 15 2011

                         Ezekiel E. Cortez

---

*Petitioner's Points and Authorities in Support of Petition for a Writ of Habeas Corpus, 28 USC 2255. CV —— .*